# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CECIL LAMAR FORT,<br><br>    Petitioner,<br><br>    v.<br><br>SHAWN HATTON,<br><br>    Respondent. | No. 2:18-cv-2603-JAM-EFB P<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a California state prisoner who, proceeding with counsel, brings an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He was convicted in the Solano County Superior Court of: (1) arson (Pen. Code § 451(b)); (2) possession of flammable material (§ 453(a)); (3) battery (§ 243(e)(1)); (4) vandalism (§ 594 (b)(2)(A)); and (5) battery on a police officer (§ 243(b)). The immediate habeas petition raises two claims. First, petitioner claims that the trial court violated his due process rights when it permitted expert testimony on fire accelerants from an individual who lacked the requisite expert qualifications. Second, petitioner argues that the state court erred in concluding that the prosecutor's misconduct did not render his trial fundamentally unfair.

    For the reasons stated below, his petition should must be denied in its entirety.

/////

/////

1

# FACTUAL BACKGROUND

## October 22, 2012

In October of 2012, petitioner was temporarily living with his girlfriend, Latoya Anderson, in a townhouse in Benicia. On October 22, petitioner and Anderson fell to arguing about the former's possible infidelity. The argument became physical and Anderson's mother – who also lived in the townhouse – called the police. The police arrived and forced petitioner to leave. Anderson's mother testified that petitioner said, as he was removed, "I know how to get back at you."

Approximately one hour later, Anderson heard a noise on her patio and investigated. She found a rock which had evidently damaged some of the wooden patio railing. Petitioner was in her driveway. Police returned and arrested petitioner.

## October 23, 2012

Petitioner was in the vicinity of Anderson's home the next day. He saw Elizabeth Coney, who lived nearby and with whom petitioner would sometimes "hang out." That afternoon, Coney walked with petitioner to a local convenience store and purchased beer for him. At approximately three or three-thirty, the two walked back to Coney's home. Petitioner went to Coney's downstairs couch, while she went upstairs to do dishes. At about four, one of Coney's sons came by the house and told her that Anderson's home was on fire. She went downstairs and observed petitioner on the couch, though she could not say whether he had been there the entire time between their return from the convenience store and the news of the fire.

Benicia Police Officer Mark Simonson arrived at Anderson's house at approximately 4:10 p.m. He observed smoke coming from an upstairs window and heard fire crackling. The front door was open and there was damage to the handle and strike plate. Also notable, was a large shoe print that had been imprinted on a decorative Halloween skeleton which hung on the door. Inside, Simonson observed a bottle of lighter fluid on the carpeted floor. The area surrounding the bottle had burned and a credenza along the far wall was also on fire.

/////

/////

Benicia Fire Captain Gregory Petersen arrived at Anderson's house at about the same time as Officer Simonson. He entered the home and extinguished the credenza and was careful not to disturb the bottle of lighter fluid. He noted that there was burnt paper at the top of the bottle.

A technician subsequently photographed the shoe print on the Halloween decoration. She also collected a beer can that was on top of a dog crate outside the front door of Anderson's home. A police sergeant noticed petitioner in a nearby parking lot shortly after the outbreak of the fire. The officer collected petitioner's shoes after noticing that their pattern was similar to the print on the door.

Petitioner was arrested shortly after the fire was extinguished. He appeared intoxicated and a field screening test produced a blood alcohol reading more than twice the legal driving limit.

<u>Subsequent Arson Investigation</u>

Boyd Lasater, a criminalist with the California Department of Justice, received petitioner's clothes after his arrest and tested a sample for fumes. He determined that the sample contained a high concentration of "medium petroleum distillates." Lasater testified that three common product categories containing such distillates include charcoal lighter fluids, dry-cleaning solvents, and paint thinners.

Benicia firefighter engineer Scott Hansen investigated the scene of the fire. Based on his observations, he concluded that the fire had two points of origin - one on the floor and one on top of a piece of furniture. He also concluded that the fire was the result of arson. He opined that there were no potential sources for an accidental fire outbreak. He also determined that the paper next to the lighter bottle was likely a "delay device" employed to allow the arsonist to start the fire and escape before it flared.

Investigators collected DNA from the beer can found outside Anderson's front door. They compared that DNA with a separate sample taken from petitioner by buccal swab. The markers were consistent and indicated, with a very high degree of likelihood, that the DNA on the can belonged to petitioner.

/////

3

# STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

## I. Applicable Statutory Provisions

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d) constitutes a "constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus." *(Terry) Williams v. Taylor*, 529 U.S. 362, 412 (2000). It does not, however, "imply abandonment or abdication of judicial review," or "by definition preclude relief." *Miller El v. Cockrell*, 537 U.S. 322, 340 (2003). If either prong (d)(1) or (d)(2) is satisfied, the federal court may grant relief based on a de novo finding of constitutional error. *See Frantz v. Hazey*, 533 F.3d 724, 736 (9th Cir. 2008) (en banc).

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. *Harrington v. Richter*, 562 U.S. 86, 99-100 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state law procedural principles to the contrary. *Id.* at 784-785 (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785.

### A. "Clearly Established Federal Law"

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. *Lockyer v. Andrade*,

538 U.S. 63, 71 72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in issue is clearly established by Supreme Court precedent." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013).

> B. "Contrary To" Or "Unreasonable Application Of" Clearly Established Federal Law

Section 2254(d)(1) applies to state court adjudications based on purely legal rulings and mixed questions of law and fact. *Davis v. Woodford*, 384 F.3d 628, 637 (9th Cir. 2003). The two clauses of § 2254(d)(1) create two distinct exceptions to AEDPA's limitation on relief. *Williams*, 529 U.S. at 404-05 (the "contrary to" and "unreasonable application" clauses of (d)(1) must be given independent effect, and create two categories of cases in which habeas relief remains available).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." *Id.* at 405. This includes use of the wrong legal rule or analytical framework. "The addition, deletion, or alteration of a factor in a test established by the Supreme Court also constitutes a failure to apply controlling Supreme Court law under the 'contrary to' clause of the AEDPA." *Benn v. Lambert*, 283 F.3d 1040, 1051 n.5 (9th Cir. 2002). *See, e.g., Williams*, 529 U.S. at 391, 393 95 (Virginia Supreme Court's ineffective assistance of counsel analysis "contrary to" *Strickland*[1] because it added a third prong unauthorized by *Strickland*); *Crittenden v. Ayers*, 624 F.3d 943, 954 (9th Cir. 2010) (California Supreme Court's *Batson*[2] analysis "contrary to" federal law because it set a higher bar for a prima facie case of discrimination than established in *Batson* itself); *Frantz*, 533 F.3d at 734 35 (Arizona court's application of harmless error rule to *Faretta*[3] violation was contrary to U.S. Supreme Court holding that such error is structural). A state court also acts

---

[1] *Strickland v. Washington*, 466 U.S. 668 (1984).

[2] *Batson v. Kentucky*, 476 U.S. 79 (1986).

[3] *Faretta v. California*, 422 U.S. 806 (1975).

5

contrary to clearly established federal law when it reaches a different result from a Supreme Court case despite materially indistinguishable facts. *Williams*, 529 U.S. at 406, 412 13; *Ramdass v. Angelone*, 530 U.S. 156, 165 66 (2000) (plurality op'n).

A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407 08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). This does not mean, however, that the § (d)(1) exception is limited to applications of federal law that "reasonable jurists would all agree is unreasonable." *Williams*, 529 U.S. at 409 (rejecting Fourth Circuit's overly restrictive interpretation of "unreasonable application" clause). State court decisions can be objectively unreasonable when they interpret Supreme Court precedent too restrictively, when they fail to give appropriate consideration and weight to the full body of available evidence, and when they proceed on the basis of factual error. *See, e.g., Williams*, 529 U.S. at 397-98; *Wiggins*, 539 U.S. at 526, 528 & 534; *Rompilla v. Beard*, 545 U.S. 374, 388 (2005); *Porter v. McCollum*, 558 U.S. 30, 42 (2009).

The "unreasonable application" clause permits habeas relief based on the application of a governing principle to a set of facts different from those of the case in which the principle was announced. *Lockyer*, 538 U.S. at 76. AEDPA does not require a nearly identical fact pattern before a legal rule must be applied. *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). Even a general standard may be applied in an unreasonable manner. *Id.* In such cases, AEDPA deference does not apply to the federal court's adjudication of the claim. *Id.* at 948.

Review under § 2254(d) is limited to the record that was before the state court. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. *Id.* In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." *Id.* at 1399.

Where the state court's adjudication is set forth in a reasoned opinion, § 2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." *Frantz*, 533 F.3d at 738

(emphasis in original). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In *Harrington*, *supra*, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. *Harrington*, 562 U.S. at 101-102.

    C.    <u>"Unreasonable Determination Of The Facts"</u>

Relief is also available under AEDPA where the state court predicated its adjudication of a claim on an unreasonable factual determination. Section 2254(d)(2). The statute explicitly limits this inquiry to the evidence that was before the state court.

Even factual determinations that are generally accorded heightened deference, such as credibility findings, are subject to scrutiny for objective reasonableness under § 2254(d)(2). For example, in *Miller El v. Dretke*, 545 U.S. 231 (2005), the Supreme Court ordered habeas relief where the Texas court had based its denial of a *Batson* claim on a factual finding that the prosecutor's asserted race neutral reasons for striking African American jurors were true. *Miller El*, 545 U.S. at 240.

An unreasonable determination of facts exists where, among other circumstances, the state court made its findings according to a flawed process – for example, under an incorrect legal standard, or where necessary findings were not made at all, or where the state court failed to consider and weigh relevant evidence that was properly presented to it. *See Taylor v. Maddox*, 366 F.3d 992, 999 1001 (9th Cir.), *cert. denied*, 543 U.S. 1038 (2004). Moreover, if "a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in a 'unreasonable determination' of the facts" within the meaning of § 2254(d)(2). *Id.* at 1001; accord *Nunes v. Mueller*, 350 F.3d 1045, 1055 (9th Cir. 2003) (state court's factual findings must be deemed unreasonable under section 2254(d)(2) because "state court . . . refused Nunes an evidentiary hearing" and findings consequently "were made without . . . a hearing"), *cert. denied*, 543 U.S. 1038 (2004); *Killian v. Poole*, 282 F.3d 1204, 1208 (9th Cir. 2002) ("state courts could not have made a proper

/////

7

determination" of facts because state courts "refused Killian an evidentiary hearing on the matter"), *cert. denied*, 537 U.S. 1179 (2003).

A state court factual conclusion can also be substantively unreasonable where it is not fairly supported by the evidence presented in the state proceeding. *See, e.g., Wiggins*, 539 U.S. at 528 (state court's "clear factual error" regarding contents of social service records constitutes unreasonable determination of fact); *Green v. LaMarque*, 532 F.3d 1028 (9th Cir. 2008) (state court's finding that the prosecutor's strike was not racially motivated was unreasonable in light of the record before that court); *Bradley v. Duncan*, 315 F.3d 1091, 1096 98 (9th Cir. 2002) (state court unreasonably found that evidence of police entrapment was insufficient to require an entrapment instruction), *cert. denied*, 540 U.S. 963 (2003).

II. <u>The Relationship Of § 2254(d) To Final Merits Adjudication</u>

To prevail in federal habeas proceedings, a petitioner must establish the applicability of one of the § 2254(d) exceptions and also must also affirmatively establish the constitutional invalidity of his custody under pre AEDPA standards. *Frantz v. Hazey*, 533 F.3d 724 (9th Cir. 2008) (en banc). There is no single prescribed order in which these two inquiries must be conducted. *Id.* at 736 37. The AEDPA does not require the federal habeas court to adopt any one methodology. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

In many cases, § 2254(d) analysis and direct merits evaluation will substantially overlap. Accordingly, "[a] holding on habeas review that a state court error meets the ' 2254(d) standard will often simultaneously constitute a holding that the [substantive standard for habeas relief] is satisfied as well, so no second inquiry will be necessary." *Frantz*, 533 F.3d at 736. In such cases, relief may be granted without further proceedings. *See, e.g., Goldyn v. Hayes*, 444 F.3d 1062, 1070 71 (9th Cir. 2006) (finding § 2254(d)(1) unreasonableness in the state court's conclusion that the state had proved all elements of the crime, and granting petition); *Lewis v. Lewis*, 321 F.3d 824, 835 (9th Cir. 2003) (finding § 2254(d)(1) unreasonableness in the state court's failure to conduct a constitutionally sufficient inquiry into a defendant's jury selection challenge, and granting petition); *Williams v. Ryan*, 623 F.3d 1258 (9th Cir. 2010) (finding § 2254(d)(1)

/////

8

unreasonableness in the state court's refusal to consider drug addiction as a mitigating factor at capital sentencing, and granting penalty phase relief).

In other cases, a petitioner's entitlement to relief will turn on legal or factual questions beyond the scope of the § 2254(d) analysis. In such cases, the substantive claim(s) must be separately evaluated under a de novo standard. *Frantz*, 533 F.3d at 737. If the facts are in dispute or the existence of constitutional error depends on facts outside the existing record, an evidentiary hearing may be necessary. *Id.* at 745; *see also Earp*, 431 F.3d 1158 (remanding for evidentiary hearing after finding § 2254(d) satisfied).

## DISCUSSION

### I. Admission of Expert Testimony

Petitioner argues that John Hansen – a "fire fighter engineer" who testified at trial as a prosecution expert in fire accelerants – did not meet the requisite qualifications for doing so. He points to the following in support of his claim: (1) Hansen's primary occupational responsibilities lay not in fire investigation, but in "operating, driving, and responding in the apparatus;" (2) Hansen had taken only two classes in fire investigation – which was sufficient to qualify him for state certification; (3) Hansen had, at the time of petitioner's trial, never before testified as an expert witness on arson investigation; (4) Hansen's prior expert court testimony only involved issues of emergency medical services; and (5) in the year prior to his testimony and two years *after* the investigation into the fire at Anderson's home, Hansen took a three-day course on the determination of fire origins. ECF No. 1 at 16.

#### A. State Court Decision

The state court of appeal considered and rejected this claim in a reasoned decision:

> Defendant argues the court abused its discretion in permitting firefighter engineer Hansen to testify as an expert in incendiary fire investigation because Mr. Hansen's formal course work on the origins of fire occurred after he investigated the scene of the fire in this case and wrote his report. We disagree.
>
> The controlling consideration in determining the admissibility of expert testimony on any subject is whether the subject matter is "sufficiently beyond common experience" such that the testimony of an expert would be of some assistance to the jury. (Evid. Code, § 801, subd. (a); *People v. McDonald* (1984) 37 Cal.3d 351, 373, 208

Cal.Rptr. 236, 690 P.2d 709 (*McDonald* ), overruled on another ground in *People v. Mendoza* (2000) 23 Cal.4th 896, 914; *People v. Valdez* (1997) 58 Cal.App.4th 494, 506.) "[T]he admissibility of expert opinion is a question of degree. The jury need not be wholly ignorant of the subject matter of the opinion in order to justify its admission; if that were the test, little expert opinion testimony would ever be heard. Instead, the statute declares that even if the jury has some knowledge of the matter, expert opinion may be admitted whenever it would 'assist' the jury. It will be excluded only when it would add nothing at all to the jury's common fund of information, i.e., when 'the subject of inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness' (*People v. Cole* (1956) 47 Cal.2d 99, 103)." (*McDonald*, at p. 367, 208 Cal.Rptr. 236, 690 P.2d 709; *see People v. McAlpin* (1991) 53 Cal.3d 1289, 1300.)

Evidence Code section 720, subdivision (a) provides: "A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates. Against the objection of a party, such special knowledge, skill, experience, training, or education must be shown before the witness may testify as an expert." The trial court has wide discretion to determine whether an opinion passes this test, and its exercise of that discretion will not be disturbed on appeal absent a manifest abuse. (*People v. Bolin* (1998) 18 Cal.4th 297, 321–322.) "Error regarding a witness's qualifications as an expert will be found only if the evidence shows that the witness 'clearly lacks qualification as an expert.'" (*People v. Farnam* (2002) 28 Cal.4th 107, 162.) In fact, "[a] trial court 'will be deemed to have abused its discretion if the witness has disclosed sufficient knowledge of the subject to entitle his opinion to go to the jury.'" (*Borrayo v. Avery* (2016) 2 Cal.App.5th 304, 314.) "Where a witness has disclosed sufficient knowledge of the subject to entitle his opinion to go to the jury, the question of the degree of his knowledge goes more to the weight of the evidence than its admissibility." (*People v. Bolin*, at p. 322.)

"Whether a person qualifies as an expert in a particular case ... depends upon the facts of the case and the witness's qualifications." (*People v. Bloyd* (1987) 43 Cal.3d 333, 357.) Applying these principles to the facts of this case and Mr. Hansen's qualifications, we conclude the court did not err in permitting him to testify. He had been a fire investigator for five years and had investigated over 100 fires. He candidly admitted that most of his training had been gained on the job. In our view, this level of training, by itself, rendered Mr. Hansen's observations of the scene he investigated, and his opinions about the number of fires set, the cause of at least one of those fires, and the possible purpose served by the paper on top of the bottle of lighter fluid, of some assistance to the jury. Knowledge of arson investigation is not so common that ordinary jurors could reach a conclusion as intelligently as the witness. In addition, since investigating the fire in this case, Mr. Hansen had enhanced his training by doing formal coursework that qualified him for state certification as a fire investigator. We do not see how gaining additional experience disqualified him from testifying as an expert in

10

> his field. It is a reasonable inference to be drawn from this record that the additional training Mr. Hansen received between his original investigation and his testimony only served to reinforce his confidence in the correctness of his original conclusions, or he would not have testified the way he did. No abuse of discretion appears.

*People v. Fort*, 2017 WL 1382560, at *5 (Cal.App. 1 Dist., 2017). This claim was raised again in a petition for review to the California Supreme Court and was summarily denied. ECF No. 12-13 at 2, 9.

### B. Relevant Federal Law

It is well settled that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Jammal v. Van de Kamp*, 926 F.2d 918, 919 (1991) (noting that "failure to comply with the state's rules of evidence is neither a necessary nor a sufficient basis for granting habeas relief."). Admissibility of evidence is generally a matter of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991). In weighing a claim that evidence was improperly admitted in a state criminal trial, a federal habeas court weighs only whether that admission rendered the petitioner's trial fundamentally unfair. *See Williams v. Taylor*, 529 U.S. 362, 375 (2000); *see also Holly v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) ("The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ.").

### C. Analysis

This claim fails. As an initial matter and as expounded by the case law reproduced *supra*, this court cannot grant habeas relief based on state law error. And, with respect to established federal law, the Supreme Court has not yet issued an explicit ruling "support[ing] the general proposition that the Constitution is violated by the admission of expert testimony concerning an ultimate issue to be resolved by the trier of fact." *Briceno v. Scribner*, 555 F.3d 1069, 1077 (9th Cir. 2009) (quoting *Moses v. Payne*, 543 F.3d 1090, 1105 (9th Cir. 2008) (overruled in part on other grounds as recognized in *Emery v. Clark*, 643 F.3d 1210 (9th Cir. 2011)). Nor has it issued

a ruling setting forth a standard for evaluating a trial court's discretionary decision to admit or exclude expert testimony. *See Moses v. Payne*, 555 F.3d 742, 758-62 (9th Cir. 2009) (speaking to the discretionary exclusion of expert testimony). Thus, this claim can succeed only if petitioner can demonstrate that there were no permissible inferences that the jury could draw from Hansen's testimony. *See Jammal*, 926 F.2d at 920 ("Only if there are no permissible inferences the jury may draw from the evidence can its admission violate due process."). There clearly were and the court of appeals found as much. To wit, "[Hansen's] level of training, by itself, rendered [his] observations of the scene he investigated, and his opinions about the number of fires set, the cause of at least one of those fires, and the possible purpose served by the paper on top of the bottle of lighter fluid, of some assistance to the jury." *Fort*, 2017 WL 1382560, at *5 (Cal.App. 1 Dist., 2017). And this determination was not unreasonable within the meaning of AEDPA. Under the relevant standard, the court of appeal's finding could be deemed unreasonable only if no fairminded jurist could agree with it. *See Harrington*, 562 U.S. at 101. Given that reasonable jurists could find that permissible inferences could be drawn from Hansen's testimony, this claim must be denied.

## II. Prosecutorial Misconduct

Petitioner argues that the prosecutor engaged in misconduct by repeatedly misstating evidence during the trial. Specifically, he points to the prosecutor's repeated contention that petitioner's clothes bore the "chemical signature" of lighter fluid. The actual evidence, as noted *supra*, was that his clothes tested positive for "medium petroleum distillates" – which includes not only lighter fluid, but also paint thinner and dry-cleaning solvent.

### A. State Court Decision

The state court of appeals considered and rejected this claim in a reasoned decision:

> Defendant argues the prosecutor committed reversible misconduct during his final summation by repeatedly misstating criminalist Boyd Lasater's testimony about medium petroleum distillates and lighter fluid. We find that the prosecutor did overstate Mr. Lasater's testimony, but any possible harm was cured by the court's remedy. We therefore reject the claim of prejudicial prosecutorial misconduct.

/////

12

Factual Background

The prosecutor stated five times, erroneously, that defendant's clothes bore the particular "chemical signature" of charcoal lighter fluid.[4] Once, the prosecutor correctly argued that "the signature he detected was consistent with only a few products, lighter fluid being one of them." Defense counsel objected after each of the first three misstatements, but each time, the trial court overruled the objection. After the last occurrence, the prosecutor finished his argument and the proceedings were adjourned for the day. The next day, defense counsel restated his objections and moved for a mistrial. Alternatively, counsel asked for a curative instruction. Lastly, if the court was not going to grant that request, counsel asked that argument be reopened for him to have "two minutes to rebut those improvident comments." The court denied the mistrial motion and declined to give a curative instruction based on *People v. Bolton* (1979) 23 Cal.3d 208. The court stated it was not finding prosecutorial misconduct, although "it's close." It viewed the prosecutor's argument as "fall[ing] within the realm of arguing what inferences you can draw from the evidence, but the use of the word chemical signature lighter fluid, there is these other things it could have been. I think maybe the remedy would be to allow the lawyers to have a brief opportunity to reargue that point. That's not a bad idea. The question is then I would give both of you that opportunity to respond, and the people would have the final opportunity to rebut that. And we'll keep it to no more than five minutes." Neither attorney was happy with the court's decision. The prosecutor did not want to reopen at all, and defense counsel did not want the prosecutor to rebut. The court instructed defense counsel to refrain from arguing prosecutorial misconduct or making personal comments. Defense counsel agreed, stating, "[A]t no point did I call it prosecutorial misconduct." Defense counsel expressly stated he did not waive his previous request for mistrial or instruction.

General Principles

"'The applicable federal and state standards regarding prosecutorial misconduct are well established. "'A prosecutor's ... intemperate behavior violates the federal Constitution when it comprises a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process."'" [Citations.] Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves """the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury."""'" (*People v.*

---

[4] **[Footnote 2 in original text]** The prosecutor argued: (1) "[S]o what about the clothes? Well, traces of charcoal lighter fluid, the chemical signature, was still on the defendant's clothes"; (2) "[A] chemical signature for this exact same product, charcoal lighter fluid"; (3) This chemical signature ended up on the clothing that the defendant is arrested in.... It's a chemical signature for which Mr. Lasater ... said he would not mistake for gasoline"; (4) "[N]obody else [was] shown to have traces of the chemical signature for the same accelerant used in this fire on their clothes"; (5) "You have the chemical analysis done of his clothes showing traces of lighter fluid chemical signature."

13

*Smithey* (1999) 20 Cal.4th 936, 960 (*Smithey*); accord, *People v. Lopez* (2013) 56 Cal.4th 1028, 1072, overruled on another point in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.) "'[W]hen the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.'" (*Smithey*, at p. 960; accord, *People v. Dykes* (2009) 46 Cal.4th 731, 772 (*Dykes*).) Our review of that question is deferential, insofar as "we 'do not lightly infer' that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements." (*People v. Frye* (1998) 18 Cal.4th 894, 970, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; *Dykes*, at p. 772.)

Lasater testified that defendant's clothes bore the chemical signature of a medium petroleum distillate, a classification that included charcoal lighter fluid, dry cleaning solvent, and paint thinner. Assuming the prosecutor's misstatements of Lasater's testimony constituted misconduct, we agree with the trial court it was remediable. Critical to our analysis is that the prosecutor's overstatements fell well within the range of inferences that could be drawn from the testimony in this case. There was no evidence that dry cleaning solvents or paint thinners were used to start these fires, but there was undisputed evidence that a bottle of lighter fluid was found at the scene of the crime. Under these circumstances, the prosecutor's comments at worst suggested that lighter fluid was the only common product containing medium petroleum distillates, and at best conflated the two parts of the permissible inference that the petroleum distillate found on defendant's clothing came from lighter fluid, and not from either cleaning solvent or paint thinner, since only lighter fluid was found at the scene of the fires. As noted above, we draw the least damaging inference rather than the most damaging inference from the prosecutor's comments during argument. Here, the prosecutor did not draw an inference that was wholly outside the evidence adduced at trial. This fact distinguishes the case under review from *People v. Bolton*, *supra*, 23 Cal.3d 208. In *Bolton*, the prosecutor insinuated that the defendant had a record of prior convictions and a propensity for wrongful acts, a fact, if it was one, on which no evidence had been adduced at trial. (Id. at pp. 211–212.)

As egregious as the misconduct was in Bolton, that court did not reverse. "Reversal of judgment is designed not so much to punish prosecutors as to protect the fair trial rights of defendants. Hence, in the absence of prejudice to the fairness of a trial, prosecutor misconduct will not trigger reversal." (*People v. Bolton*, *supra*, 23 Cal.3d at p. 214.) Here, the trial court could have given an admonition, but its chosen remedy cured the harm from the prosecutor's overstatement of the evidence. In their reopened arguments, the attorneys did not misstate the evidence, focused the jury's attention on the actual testimony at issue, and corrected the misimpression left by the prosecutor's prior comments. Under these circumstances, there is no reasonable probability that a result more favorable to defendant would have occurred had the prosecutor refrained from overstating his case before argument was reopened. (*People v. Bolton*, at p. 214.)

*Fort*, 2017 WL 1382560, at *6–7 (Cal.App. 1 Dist., 2017). This claim was raised again in a petition for review to the California Supreme Court and was summarily denied. ECF No. 12-13 at 2, 9.

B. Relevant Federal Law

A prosecutor's improper comments will be held to violate a defendant's Constitutional rights only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (per curiam) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). To grant habeas relief, the Court must find that the state court's rejection of the prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker*, 567 U.S. at 47 (quoting *Harrington*, 562 U.S. at 103).

C. Analysis

The court cannot conclude that the prosecutor's statements rendered petitioner's trial so unfair as to make his conviction a violation of due process. As the court of appeals noted, the trial court, after denying petitioner's motion for a mistrial based on the prosecutor's statements, permitted both sides to re-argue the point to the jury. In relevant part:

> **The Court:** Here's what I will do. Probably more inclined – I don't think this is prosecutorial misconduct. I think it falls within the realm of arguing what inferences you can draw from the evidence, but the use of the word chemical signature lighter fluid, there is these other things it could have been. I think maybe the remedy would be to allow the lawyers a brief opportunity to reargue that point.

ECF No. 12-11 at 14-15. The trial court went on to offer each side five minutes to reargue the point as to what the tests of petitioner's clothing indicated. *Id.* at 17-20. Additionally, the trial court instructed the jury that it was "up to all of you, and you alone to decide what happened, based *only on the evidence* that has been presented to you in this trial." ECF No. 12-4 at 107 (emphasis added). It also instructed that "[n]othing the attorneys say is evidence. In their opening statements and closing arguments, the attorneys discuss the case, but their remarks are not evidence." *Id.* at 111. Juries are presumed, absent evidence to the contrary, to follow their

15

instructions. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Based on the foregoing, the court cannot conclude that the court of appeal's rejection of this claim was so erroneous as to be beyond the possibility of fairminded disagreement.

## CONCLUSION

For all the reasons explained above, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: October 28, 2019.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE